UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MICHELLE JACKSON, | ) No. CV 12-10733-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") provided

        specific and legitimate reasons for rejecting the opinion of the treating physician; and

   2. Whether the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective complaints.

(AR at 4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE ALJ FAILED TO PROVIDE SPECIFIC AND LEGITIMATE REASONS**
**TO REJECT THE OPINION OF HER TREATING DOCTOR**

Plaintiff filed her Title II application for a period of disability and disability insurance benefits on June 15, 2009, alleging an onset date of February 28, 2009, due to high blood pressure, chronic obstructive pulmonary disease ("COPD") and asthma. (AR 24.) Her claim was denied administratively and after she received the hearing she requested from the ALJ, an unfavorable Decision issued (AR 24-31), which is the basis for this lawsuit.

The ALJ determined that Plaintiff's residual functional capacity ("RFC") would enable her to perform light work as defined in 20 C.F.R. § 404.1567(b) with limitations of only occasional postural activities, no climbing of ladders, avoidance of concentrated exposure to dust, fumes, extremes in temperature, and hazards. (AR 28.)

The ALJ was well aware of Plaintiff's history of hypertension and treatment for that condition, and was aware that she had suffered a

heart attack in July 2008. Indeed, the ALJ referenced medical records which reflect treatment that predates the alleged onset date. (See, e.g., AR 29: "The claimant's medical records show that claimant repeatedly reported chest pain.") In so stating, the ALJ referenced medical treatment records dating from July 2008 to November 2008 (AR 260-318), July 28, 2008 to April 17, 2009 (AR 350-408), June 12, 2007 to October 13, 2010 (AR 430-546), and then September 23, 2010 to October 2, 2010 (AR 581-591). The ALJ noted that after Plaintiff was hospitalized in July 2008 for a myocardial infarction, a catheterization was attempted but discontinued. (AR 29.) Thus, it is clear that the ALJ considered pre-onset date medical records in making a determination of whether Plaintiff is disabled.

In determining Plaintiff's RFC, however, the ALJ discussed only three sources: her treating physician, Dr. Hussain; a consultative examiner, Dr. Benrazavi; and the State Agency non-examining physician. (AR 29-30.) With regard to the treating physician, the ALJ only discussed a "Physical Residual Functional Capacity Questionnaire" (AR 547-551), which Dr. Hussain completed. (See Discussion at AR 29.) The ALJ provided only two articulated reasons for rejecting Dr. Hussain's opinion: first, because it is not "consistent with or supported by substantial medical evidence of record," and second, that it is based only on Plaintiff's subjective allegations without any objective assessment of the veracity of those complaints. (AR 30.) In articulating these reasons, the ALJ' Decision runs directly against Ninth Circuit law which cautions against reliance on such generalizations, and, indeed rejects them as being adequate to sustain a decision. See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001). "To say that medical opinions are not supported by sufficient

objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required. The ALJ must do more than offer than his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct." See Embry v. Bowen, 849 F.2d 418, 421-422 (9th Cir. 1988).

The lack of specificity articulated in the Decision becomes even more apparent when one examines the longitudinal record of Plaintiff's hypertension, COPD, and other diseases. Neither party comments on a February 11, 2008 internal medicine consultation report prepared by Dr. Tamiry. (AR 247-255.) This examination and report predated Plaintiff's heart attack, but Plaintiff was clearly suffering from hypertension at the time, and Dr. Tamiry advised that her functional capacity would permit the exertion required of light work only "if the blood pressure is under reasonable control, ..." (AR 254.) What is clear from a review of this record is that, despite years of medications, which have been adjusted many times, Plaintiff's blood pressure is, if not out of control, largely uncontrolled. Dr. Hussain reviewed these notes, and likely relied upon them in making her evaluation.

As to the other reason articulated by the ALJ - that Dr. Hussain's conclusions appear to be solely based on Plaintiff's subjective complaints - that too must fall by the wayside as an inadequate and incorrect evaluation and analysis of the record. Again, there is objective evidence of years of hypertension, COPD, and corresponding complaints of shortness of breath. (See, AR 562.)

Delving further into the basis for the RFC determination in the Decision yields only more questions. Dr. Benrazavi, who did a

consultative internal medicine examination, assessed that Plaintiff was capable of medium exertional work (AR 416), a fact noted by the ALJ, who rejected these conclusions because they failed to consider Plaintiff's "allegations of pain and fatigue." (AR 30.)  Yet, the Court is at a loss to understand how Plaintiff's fatigue and pain, if they were in fact accepted as valid by the ALJ, were factored into the RFC.  The Court can only speculate that the ALJ may have been reducing Dr. Benrazavi's assessment that Plaintiff could do medium exertional work to a light work restriction based on pain and/or fatigue.  Of course, the Court's role is not to speculate, but to evaluate an ALJ's decision to determine whether it is based on substantial evidence. That is simply not possible given the ambiguity in the Decision.

Finally, the ALJ's articulated reliance on the conclusions of the State Agency non-examining physician "because his findings are both consistent with and supported by the substantial medical evidence of record" (AR 30) is, again, a non-reviewable conclusion, because the Court is not informed by the Decision exactly what objective evidence supports the non-examining physician's opinion.

Given the above, this matter clearly must be remanded for a new hearing.  The Court is not making a determination that the treating physician's functional capacity assessment must receive deference, but at the same time, if her conclusions are to be rejected or depreciated, it must be based on specific and legitimate reasons, as required by well-recognized Ninth Circuit case law.

The Court will address Plaintiff's second issue, which concerns the depreciation by the ALJ of her credibility, because it relates to the first.  One reason cited by the ALJ is an inconsistency between objective medical evidence and her claimed symptoms. (AR 30.)  As the

Court has noted in its determination of the first issue, the ALJ's analysis of the objective evidence does not withstand scrutiny. Therefore, in and of itself, in Plaintiff's case, this is an impermissible reason.

Also impermissible is the ALJ's assertion of and reliance upon a lack of treatment for various conditions, or receipt of only conservative treatment. Here, the ALJ failed to deal with issues of financial limitations or inability to pay for medical treatment, which clearly appear in the record. For example, at the hearing, when asked the name of her cardiologist, Plaintiff indicated she has no insurance, and the ALJ responded that she understood this. (AR 54.) Yet, Plaintiff was faulted for conservative treatment when her credibility was assessed. This also relates to the ALJ's reliance on Plaintiff's testimony that she is looking for work and sends out her resume. In fact, at the hearing, when the ALJ asked if she were offered a job back in medical collections whether she would be able to do it, Plaintiff plainly answered, "Well, considering I'm the only one that has an income, and I have to pay rent, I would try to do it." (AR 63.)

With regard to the nature of her medical care, there is a question as to whether it in fact was conservative. For example, after a myocardial infarction, Plaintiff received a catheterization which was unsuccessful. It was determined that it would not be safe to proceed with that kind of treatment. With regard to her hypertension, as the Court has noted in this Opinion, Plaintiff has been consistently treated, but her hypertension remains, at best, difficult to control.

Plaintiff alleged that she could not walk for any length of time,

which the ALJ found to be untrue and unsupported by the objective evidence, but it does not appear that the ALJ considered Plaintiff's morbid obesity, or the fact that she suffers from severe COPD and has bilateral swelling of her legs, along with uncontrolled hypertension. (AR 554.) The relationship of these conditions to Plaintiff's claims of difficulty walking should be analyzed to determine if they are indeed valid.

For the foregoing reasons, on remand, Plaintiff's credibility will be reevaluated, and impermissible bases for credibility assessment will no be utilized.

This matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED**.

DATED: October 30, 2013            /s/
                                   VICTOR B. KENTON
                                   UNITED STATES MAGISTRATE JUDGE